STATE OF NEBRASKA, APPELLANT, V. DUSTIN L. BELMAREZ, ALSO KNOWN AS DEON BELMAREZ, APPELLEE.

577 N.W. 2d 255

Filed April 10, 1998.   No. S-96-1159.

Don Stenberg, Attorney General, and J. Kirk Brown for appellant.

James R. Mowbray and Jeffery A. Pickens, of Nebraska Commission on Public Advocacy, and Robert H. Conner for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WRIGHT, J.

## NATURE OF CASE

The State of Nebraska appealed from the district court's order granting postconviction relief which vacated Dustin L. Belmarez' conviction for aiding and abetting second degree

murder. However, the State and Belmarez jointly moved to dismiss the State's appeal. Subsequently, we granted the State's motion to reinstate this appeal based upon allegations by the State that Belmarez had refused to honor a plea agreement which was the basis for the joint motion for dismissal of the State's appeal. Belmarez now claims that we lacked jurisdiction to reinstate the appeal.

## SCOPE OF REVIEW

Whether or not a question is raised by the parties concerning jurisdiction, it is not only within the power but it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. See, *State v. Wieczorek*, 252 Neb. 705, 565 N.W.2d 481 (1997); *State v. McCracken*, 248 Neb. 576, 537 N.W.2d 502 (1995).

## FACTS

Belmarez was first charged on September 17, 1990, with two counts of first degree murder (one count for the murder of Lester Tucker and one count for the murder of Chester Tucker). In addition, Belmarez was charged with two counts of robbery, one count of theft by unlawful taking, and two counts of using a deadly weapon to commit a felony.

Pursuant to a plea agreement, Belmarez pled no contest to an amended information charging him with one count of first degree murder of Lester Tucker and one count of aiding and abetting another in the commission of second degree murder of Chester Tucker. The plea agreement provided that the State would not seek the death penalty on the first degree murder charge involving Lester Tucker, the State would not file any other charges arising out of the incident, and the State would dismiss the five other felony charges.

On May 16, 1991, Belmarez was sentenced to two consecutive sentences of life imprisonment. The district court stated in part: "Evidence was presented[,] and upon the evidence, the Court finds a factual basis and finds the Defendant guilty as to Count I and guilty as to Count II."

On June 17, 1991, Belmarez filed a direct appeal from the sentence, but the appeal was voluntarily dismissed. See *State v. Belmarez*, 239 Neb. xxvii (case No. S-91-607, Nov. 4, 1991).

On January 31, 1995, Belmarez filed a motion in arrest of judgment pursuant to Neb. Rev. Stat. §§ 29-2104 and 29-2106 (Reissue 1995). The motion alleged that the facts stated in the information did not constitute an offense because the information did not allege malice as an element of second degree murder, in accordance with *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994). On March 15, the district court overruled the motion.

On April 1, 1996, Belmarez filed a "Verified Motion to Vacate and Set Aside Judgment and Conviction" pursuant to Neb. Rev. Stat. § 29-3001 (Reissue 1995) and refiled a copy of his motion in arrest of judgment. On October 10, the district court set aside Belmarez' conviction for second degree murder, but refused to set aside his conviction for first degree murder.

The State timely filed a notice of appeal from the district court's order setting aside the second degree murder conviction. The State requested this court to reverse our holding in *Myers* and its progeny. Concurrent to this notice of appeal, the State made a plea offer to Belmarez to dismiss its appeal if Belmarez agreed to be rearraigned and plead guilty to a charge of aiding and abetting second degree murder in which malice had been inserted as an element of the offense. By letter, Belmarez' counsel advised the State that Belmarez had accepted this plea offer.

On December 10, 1996, this court received a stipulation and joint motion for dismissal of this case (case No. S-96-1159) which stated that the dismissal was necessary in order for a plea agreement reached by the parties to be executed. We overruled the motion without prejudice to filing a stipulation without conditions. Following a second joint motion for dismissal, we dismissed the appeal on January 6, 1997. This mandate was filed in the district court on January 13.

At a hearing on January 24, 1997, Belmarez' counsel advised the district court that a plea agreement had been reached wherein Belmarez would enter a plea of guilty to a charge of aiding and abetting second degree murder in which the element of malice had been inserted. Belmarez' cocounsel then interjected: "Your Honor . . . I thought that we had all this hammered out. . . . [Belmarez] just informed me that he chooses to exercise his waiting period. So, there's going to be a problem enter-

ing a plea today; and I'm sorry for the inconvenience of the Court."

A hearing for Belmarez to enter his plea was set for January 28, 1997, and Belmarez' counsel requested a psychological evaluation of Belmarez to update the presentence investigation. Belmarez was served with a copy of the amended information charging him with aiding and abetting second degree murder, with malice included as an element of the offense.

On January 28, 1997, Belmarez' counsel informed the district court that Belmarez was not prepared to enter the plea agreement because counsel believed it was necessary to first evaluate Belmarez to determine competency. The motion was later withdrawn, on April 30, because a psychiatrist had determined that Belmarez was competent to stand trial.

On April 30, 1997, the State filed a "reinstated information" charging Belmarez with first degree murder for the killing of Chester Tucker. In response, Belmarez filed a plea in bar, a plea in abatement, and two motions to quash. The plea in bar asserted that under the first plea agreement, which resulted in a second degree murder conviction that was later vacated, the State was bound by its agreement that it would not file any other charges arising out of the incident in question. The plea in abatement made the same objections.

Belmarez' first motion to quash asserted that the information sought to be reinstated had been amended, that the information failed to sufficiently inform him as to the nature of the charge, and that there was no constitutional or statutory authority for a reinstated information. The second motion to quash raised various objections to the possible imposition of the death penalty.

On May 14, 1997, the State filed with this court a motion to reinstate this appeal. Although a copy of the motion was served on Belmarez, no objection to reinstatement was filed. The record does not disclose that the district court was aware of the motion to reinstate the appeal or that the State requested a stay of the district court proceedings.

While the motion to reinstate was pending before this court, proceedings continued in the district court on the State's reinstated information. On May 27, 1997, the district court held a hearing on the motions filed by Belmarez, and Belmarez filed

an amended plea in bar. The amended plea in bar reiterated that the State was bound by the plea agreement not to charge him with more than second degree murder. It further asserted that if Belmarez was charged with first degree murder of Chester Tucker, the plea to and conviction of first degree murder of Lester Tucker would have to be set aside.

On August 12, 1997, the district court found that the death penalty issues raised were premature. Belmarez' plea in bar, amended plea in bar, plea in abatement, and motion to quash in relation to the reinstated information were overruled. Belmarez' motion to strike the addendum to the reinstated information was sustained, and the district court denominated the reinstated information as an amended information. The district court concluded that the State was free to pursue the first degree murder charge involving Chester Tucker absent the entry of a plea of no contest to the charge of second degree murder involving Chester Tucker.

On August 20, 1997, Belmarez filed an interlocutory appeal challenging the district court's order overruling his plea in bar and amended plea in bar. That appeal is before this court as case No. S-97-875. See *State v. Belmarez, post* p. 467, 577 N.W.2d 264 (1998).

On September 17, 1997, we sustained the State's motion to reinstate this appeal. We note that during the pendency of the motion to reinstate, the State did not submit a supplemental transcript or bill of exceptions of the district court proceedings.

On October 30, 1997, Belmarez moved this court for summary dismissal on the grounds that we lacked jurisdiction to reinstate the State's appeal. In the alternative, Belmarez moved for summary affirmance of the district court's order of postconviction relief. We overruled Belmarez' motion but required the parties to submit briefs regarding this court's jurisdiction to reinstate the appeal.

## ANALYSIS

This case is before us in the context of a motion to reinstate an appeal based upon the alleged breach of a plea agreement. The motion to reinstate filed by the State on May 14, 1997, alleged that Belmarez had failed to comply with a plea agree-

ment pursuant to which the appeal had voluntarily been dismissed. Although a copy of the motion to reinstate was served upon Belmarez, no objection to the reinstatement was filed. The record does not disclose that the district court was aware of the motion to reinstate the appeal or that the State requested a stay of the proceedings that were pending in the district court.

As previously discussed, Belmarez filed various motions in the district court. On August 12, 1997, while the motion to reinstate was pending before this court, the district court ruled on Belmarez' motions. The district court overruled Belmarez' plea in bar and amended plea in bar, which ruling resulted in Belmarez' interlocutory appeal (case No. S-97-875). See *Belmarez, supra.*

It is the general rule that once the trial court acts upon a mandate issued by this court, this court loses jurisdiction over the cause except upon a subsequent appeal. See, *Rehn v. Bingaman,* 152 Neb. 171, 40 N.W.2d 673 (1950); *State Bank of Beaver Crossing v. Mackley,* 118 Neb. 734, 226 N.W. 318 (1929). In *Mackley,* after considering the merits of the case on direct appeal, we reversed the judgment and remanded the cause with directions to enter a judgment for the plaintiff. A motion for rehearing was overruled, and a mandate was issued. Subsequently, believing that no action had yet been taken on the mandate, we sustained a motion by the defendant to recall the mandate and examine the record and motion for rehearing. The plaintiff moved to vacate the order recalling the mandate and presented evidence that after the cause was remanded to the district court, it had taken action upon the original order of reversal. We concluded that we lacked jurisdiction to recall the mandate and stated:

It is not conceivable that both the supreme court and the district court could at the same time have jurisdiction of this cause. On the filing of the mandate in the district court, and some action being taken thereon by it, that court acquired jurisdiction, and this court lost any power thereafter to act in the case except upon a subsequent appeal.

*Mackley,* 118 Neb. at 735, 226 N.W. at 318 (citing *State v. Lincoln Street R. Co.,* 80 Neb. 352, 118 N.W. 326 (1908), and *Horton v. State,* 63 Neb. 34, 88 N.W. 146 (1901)). Cf. *Fick v.*

*Herman*, 161 Neb. 110, 72 N.W.2d 598 (1955) (holding that where after mandate of this court was received by clerk of district court, but district court had taken no action on it, this court could recall mandate if reason for so doing existed).

In *Rehn*, we likewise overruled a motion to recall the mandate of this court. Previously, we had reversed a money judgment in favor of the plaintiff, dismissed the cause, and taxed costs against the plaintiff and a third-party defendant. After the trial court had complied with the mandate, the third-party defendant complained to this court that we had erred in taxing the costs against him. We refused to recall the mandate and stated:

> In the case before us the mandate of this court was filed in the district court for Douglas County on November 21, 1949. The Supreme Court therefore lost jurisdiction to change or modify its judgment awarding costs unless the mandate was recalled in accordance with the rule announced in State Bank of Beaver Crossing v. Mackley, 118 Neb. 734, 226 N.W. 318.

*Rehn*, 152 Neb. at 174, 40 N.W.2d at 675.

We point out that there may be some proceedings in a lower court which occur after the filing of the mandate from the appellate court which would not divest the appellate court of jurisdiction to reinstate an appeal which has been dismissed. Therefore, we decline to hold that any proceeding at the lower court level which occurs after the filing of the mandate dismissing an appeal would be an action by the lower court on the mandate such as to divest the appellate court of jurisdiction to reinstate the appeal. However, we conclude that in the context of the facts before us, the prohibition against a trial court and an appellate court having jurisdiction over the cause at the same time divests this court of jurisdiction to hear the State's appeal from the postconviction relief granted to Belmarez by the district court.

Unknown to this court, at the same time we were considering whether to grant the State's motion to reinstate the appeal, proceedings involving the murder of Chester Tucker were continuing at the district court level. These proceedings continued in the district court because the State apparently failed to notify

the court of the pending motion to reinstate the State's appeal or otherwise attempt to stay the district court proceedings. Instead, the State proceeded in the district court on the first degree murder charge. As a result of the district court proceedings on the State's amended information, we now have before us case No. S-97-875, which is the interlocutory appeal described herein. See *State v. Belmarez, post* p. 467, 577 N.W.2d 264 (1998).

During the time that the motion to reinstate was pending, either the district court or this court had jurisdiction of the cause involving the murder of Chester Tucker, but the district court and this court could not have jurisdiction simultaneously. We conclude that we did not have jurisdiction to reinstate the appeal. The district court received the mandate of this court dismissing the State's appeal from the order vacating Belmarez' second degree murder conviction, and there was no motion by the State to recall the mandate. The State filed the amended information charging Belmarez with first degree murder, and the district court acted on the motions and pleas filed by Belmarez therein. As a result, this court lost jurisdiction, and the appeal should not have been reinstated.

## CONCLUSION

The reinstatement of this appeal (case No. S-96-1159) is vacated, and the appeal is dismissed.

VACATED AND DISMISSED.